CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 07 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BETH B. SMITH, Administrator of the )
Estate of HARVEY L. BOWER, deceased, )
                                      )
        Plaintiff,              )       Civil Action No. 7:10-cv-294
                                        )
v.                                   )       **MEMORANDUM OPINION**
                                        )
UNITED STATES OF AMERICA,     )       By: Hon. Glen E. Conrad
                                        )       Chief United States District Judge
        Defendant.           )

The plaintiff brought this slip-and-fall case against the defendant pursuant to the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. The case is now before the court on the

defendant's motion for summary judgment. For the reasons stated below, the defendant's motion

will be denied.

**Factual and Procedural Background**

The following facts are stated in the light most favorable to the plaintiff. Terry's Floor

Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

At approximately 12:10 p.m. on March 23, 2009, 84-year-old Harvey L. Bower fell in the

hallway at the Salem Veterans Affairs Medical Center ("Salem VAMC") as he was en route to a

dental appointment in the building. Although he hadn't noticed any slickness or other problem

with the condition of the floor, Bower's feet came out from under him as he approached the

Dental Clinic. (Bower Dep. at 5.) After falling to the floor, striking his shoulder and head, and

fracturing his hip, Bower felt a substance like "white jelly" or "wax" in his right hand. (Bower

Dep. at 3, 5.) He also had an oily patch or stain on his pants. (Smith Dep. at 78.) Neither Bower

nor the plaintiff[1] is certain about what caused his fall. (Smith Dep. at 70.) Prior to this incident, Bower was physically independent and active, and did not have a history of falling.

Immediately adjacent to the location of Bower's fall, three Veterans Administration employees were working in Conference Room 2-152. Earlier that morning—at approximately 10:45 a.m.—cold drinks and a bowl of ice had been delivered to the conference room for their refreshment. Wanda Henry, the Supervisor of Canteen Services at Salem VAMC, believes that they were delivered by an employee named Beatrice McNeil, although McNeil has no memory of having done so. The carts used by McNeil to deliver catering in March 2009 had old, worn wheels which made them relatively difficult to maneuver. McNeil no longer uses those carts for catering deliveries; they were replaced with smaller carts that are lighter and easier to maneuver than the carts she used in March 2009. (McNeil Dep. at 14.) Typically, McNeil covers containers of liquids when she wheels them around, but does not always cover ice containers, particularly when she is delivering ice for fewer than ten people. (McNeil Dep. at 24.) For the three individuals in Conference Room 2-152, the drinks were delivered in a bowl of ice measuring approximately twelve inches by twelve inches. Although McNeil has no memory of having made any delivery on March 23, 2009 or causing any spills on that date, she estimates that she spills liquids or ice once every four or five months. (McNeil Dep. at 20.) Although at least one of the three conferencing individuals walked through the hallway to the conference room between 10:45 and 12:10, none of them noticed anything unusual about the floor where Bower later fell. (Carlson Dep. at 46, 50.)

---

[1] The administrator of Bower's estate, Beth B. Smith, was subsequently substituted as the plaintiff in this case.

When the three employees in the conference room heard the sound of Bower's fall, they immediately stepped into the hallway to investigate, finding Bower half-sitting and half-leaning against the wall. Bower informed them that he had slipped and repeatedly advised that the floor was slippery. (Carlson Dep. at 17, 20.) The three employees were primarily concerned with procuring medical assistance for Bower, but none of them saw anything slippery on the floor or observed anything on Bower that was wet or sticky, even when they specifically looked on the floor for evidence of liquid. (Carlson Dep. at 20, 44; Walters Dep. at 18, 40; Robinson Dep. at 15, 26.)

When a Medical Emergency Team responded to the scene, one of the team members, Rene Crosier, knelt on the floor beside Bower to start an IV for him. According to Crosier, such a process—which requires spiking the IV bag and draining the line—often involves dripping some of the IV fluid on the floor, but she does not know whether she spilled any fluid when starting Bower's IV. (Crosier Dep. at 15.) After straightening up from inserting the IV, Crosier noticed some dampness on the side of her pants and commented on it to her colleagues. (Crosier Dep. at 25.) The dampness was not sticky, and Crosier later opined that it could have been accounted for by liquid from the IV bag. (Crosier Dep. 25-28.) She did not notice any wet or slick substance on the floor. (Crosier Dep. at 15, 25, 34-36.) Neither did Jasmine Robinson, a fellow responder to the incident scene. (Robinson Dep. at 18, 24.)

After Bower was transported to the Emergency Department, Carol Carlson—one of the individuals who had been in the nearby conference room—completed an incident report in which she made the following remarks:

One nurse who arrived stated that the floor near him was wet as her uniform was wet after sitting on the floor during her assessment process with the patient. She had caused some more drops of moisture while starting the IV, but that was right next to the wall and not in the same place. Once he left, minimal drops of moisture were detected about 2 feet out from the wall. VA Police stayed in the area until the floor was cleaned and dry.

(Pl. Br. Ex. L at 1.) Carlson has subsequently stated that she did not personally see any water on the floor of the hallway other than a couple of drips from the IV bag. (Carlson Dep. at 44.)

Bower filed this action on June 30, 2010 under the FTCA, alleging that his fall was a result of Salem VAMC's failure to maintain the floor in a reasonably safe condition and in failing to provide notice of the unsafe condition of the floor. The defendant has now moved for summary judgment under Federal Rule of Civil Procedure 56(a).

## Discussion

An award of summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a party's evidence to raise a "genuine" issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Id. In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

4

Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show that there is more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, to forestall summary judgment, the nonmoving party must set forth "specific facts" amounting to more than a "mere . . . scintilla of evidence." Anderson, 477 U.S. at 248, 252. Nor can the nonmoving party "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita, 475 U.S. at 587. On the other hand, if reasonable minds could differ as to the import of the evidence, summary judgment must be denied. Anderson, 477 U.S. at 250.

## I. **Applicable Law**

"In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983). See also 28 U.S.C. § 1346(b)(1). "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." Talley v. Danek Medical, Inc., 179 F.3d 154, 157 (4th Cir. 1999).

Due to Bower's status as an invitee of Salem VAMC, see Volpe v. City of Lexington, 708 S.E.2d 824, 827 (Va. 2011), it owed him a duty to exercise ordinary care toward him, maintaining the premises in a reasonably safe condition for his visit, removing foreign objects

5

from its floors which it knew or should have known were there, and warning him of any latent unsafe condition that was or should have been known to Salem VAMC. Winn–Dixie Stores, Inc. v. Parker, 396 S.E.2d 649, 650 (Va. 1990).

## II.    **Existence of a Hazardous Condition**

The defendant presses the court to adopt its opinion that the plaintiff's evidence puts neither of two operative elements of a premises liability claim under Virginia law—existence of a hazardous condition and notice thereof—in genuine dispute. First, of course, the plaintiff must prove "the existence of an unsafe or dangerous condition on the premises." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 451-52 (4th Cir. 2004) (citing Kendrick v. Vaz, Inc., 421 S.E.2d 447, 450 (Va. 1992)). And "[t]he general rule in Virginia is that a plaintiff must, in order to establish a defendant's negligence, prove 'why and how the incident happened'; 'if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.'" Id. at 451 (citing Town of West Point v. Evans, 299 S.E.2d 349, 351 (Va. 1983).

In this case, the plaintiff presents the following theory of events: (a) McNeil, an employee of Salem VAMC, delivered catering to Conference Room 2-152 at approximately 10:45 a.m. on March 23, 2009, using an old, difficult-to-maneuver cart with worn-out wheels; (b) an uncovered twelve-inch by twelve-inch bowl of ice constituted part of McNeil's delivery; (c) McNeil had to turn the hard-to-maneuver cart from the hallway into the conference room in order to complete the delivery; (d) some ice spilled out of the uncovered ice bowl as McNeil negotiated the turn; (e) the ice remained on the floor for an hour and twenty minutes, during which time it melted; and (f) Bower subsequently stepped in the resulting water and was precipitated to the floor.

Although the defendant urges that the plaintiff's theory is constructed upon a cascade of inference—which is insufficient to forestall summary judgment, Beale, 769 F.2d at 214—the court cannot agree that the plaintiff has failed to raise a genuine dispute with respect to the existence of a hazardous condition. Plaintiff has corralled evidence tending to show that McNeil made the delivery on the date in question, that she delivered an uncovered bowl of ice using a worn and awkward cart, that she had to negotiate a turn with the unwieldy cart at the site of Bower's fall in order to deliver the uncovered bowl of ice, and that she has spilled liquids and ice in the past during the course of her food service duties. Bower claims that, after he fell, both his hand and pants bore a substance that they did not have on them prior to his fall. One of the first responders to the scene of the incident likewise observed, after kneeling on the floor near where Bower fell, that her pants were moist. Cf. Ruppel v. Kroger Co., 2000 WL 33232321, at *1-2 (W.D. Va. Dec. 20, 2000) (Michael, J.) (unpublished) (plaintiff sufficiently put into issue whether water was on the ground where plaintiff fell when she testified that her pants were wet after she fell even though she was positive that they were dry before she fell). Moreover, Carlson has indicated that there was moisture on an area of the floor that was not caused by the IV procedures and that, after Bower had been transported to the ER, some custodians were called to clean up some fluid on the floor.

Although the issue is a close one, the court concludes that a reasonable factfinder could infer from this evidence that McNeil spilled ice out of the uncovered bowl onto the floor while turning into Conference Room 2-152, making this delivery one of the twice-or-thrice-yearly incidents in which McNeil spilled liquids during the course of her job duties. Similarly, a factfinder could infer that Bower slipped in the hallway on water that resulted from McNeil's

conduct. Certainly, the fact that no water or ice was observed on the floor by several individuals who arrived at the conference room after the drinks were already delivered, the fact that none of the medical responders personally saw any water on the floor after the incident, the fact that the moisture noted on Crosier's pants could have come from the IV bag, and the fact that Bower himself blamed a waxy substance as the cause of his fall, may cut against the probability of plaintiff's success in a proceeding where all inferences need not be construed in her favor. Nevertheless, the court is constrained to conclude that, for purposes of the present motion, the plaintiff's evidence on this issue is sufficient to demonstrate that Salem VAMC created the hazardous condition by affirmative conduct.

## III.    Defendant's Notice of a Hazardous Condition

The defendant also contends that the plaintiff has failed to demonstrate that the defendant had sufficient notice of the hazardous condition alleged in this case. Where, as here, the plaintiff claims that the premises owner created the hazardous condition (a so-called "affirmative conduct" case), Virginia law imputes notice to the defendant if the resulting danger was reasonably foreseeable. Harrison v. The Kroger Co., 737 F. Supp. 2d 554, 557 (W.D. Va. 2010) (Urbanski, J.).[2] Under this approach, therefore, the relevant question in determining whether the defendant has been negligent is the foreseeability of the danger arising from the condition: "If an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the defendant]

---

[2] In a "passive conduct" case, by contrast (where plaintiff alleges that a third party caused the hazardous condition), a plaintiff would have to establish that the premises owner had actual or constructive notice—i.e., that it knew or should have known—of the hazardous condition. Harrison, 737 F. Supp. 2d at 557. But see Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 453 (4th Cir. 2004) (construing Memco's foreseeability test as a tool in determining "constructive notice").

had a duty to exercise reasonable care to avoid the genesis of the danger." <u>Memco Stores, Inc. v.</u> <u>Yeatman</u>, 348 S.E.2d 228, 231 (Va. 1986).

Again, although the issue of notice is an extremely close one, the court must construe the evidence in the light most favorable to the plaintiff at this stage in the case. <u>Shaw</u>, 13 F.3d at 798. The plaintiff is "not required to prove that [the defendant] had actual notice of the dangerous condition of its floor." <u>Austin v. Shoney's, Inc.</u>, 486 S.E.2d 285, 288 (Va. 1997). Instead, if the factfinder accepted the plaintiff's theory that Bower slipped in water caused by McNeil's ice spill, "the hazardous condition was affirmatively created by the property owner. Thus, [the defendant] is charged with constructive knowledge of the risk because it had a duty to exercise reasonable care to avoid the genesis of the danger." <u>Id</u>. (citation omitted).

As has been noted above, the plaintiff has marshaled sufficient evidence for a factfinder to conclude that McNeil used a worn-wheeled, maladroit cart to deliver an uncovered bowl of ice around a corner and into a conference room. The type of cart used by McNeil was later replaced with lighter, more maneuverable carts. Further, McNeil has admitted that she occasionally spills liquids and ice during the course of her duties. Under these circumstances, the court can only conclude that Salem VAMC "could have foreseen" the risk that ice would spill out of the uncovered bowl, off of the unwieldy cart, and onto the floor, where it would melt and cause a hazard to passersby such as Bower. <u>Memco</u>, 348 S.E.2d at 231.

Indeed, in a case similar to the one at bar, this court held that a reasonable jury could conclude that a defendant store created a hazardous condition where it mounded ice in an apple cider display "in such a manner that the [ice] could and did fall in the aisle" and caused the plaintiff's fall. <u>Jordan v. Food Lion, Inc.</u>, 2001 WL 420365, at *2 (W.D. Va. Mar. 30, 2001)

9

(Michael, J.) (unpublished) (quoting <u>Memco</u>, 348 S.E .2d at 231). Of course, as the <u>Jordan</u> court

recognized, the Supreme Court of Virginia has rejected the notion that a premises owner's

negligence can be proved simply by "the means used to exhibit commodities for sale." <u>Id</u>.

(quoting <u>Winn-Dixie</u>, 396 S.E.2d at 651 n. 3); <u>see also Hodge</u>, 360 F.3d at 453-54. Nevertheless,

<u>Jordan</u> correctly observed that Virginia courts

> [do] not reject the proposition that negligence could be proven when a defendant
> acts affirmatively to make a display foreseeably dangerous. Such was the case in
> <u>Memco</u>, in which the defendant's affirmative act of positioning a plant on a store
> furniture display caused a foreseeable hazard of which the store should have been
> aware. <u>See</u> 348 S.E.2d at 231. As in <u>Memco</u>, a reasonable jury in this case could
> find that the defendant's affirmative act of positioning the ice on the apple cider
> display in a downward-sloping fashion caused a foreseeable hazard of which the
> defendant should have been aware, and which it failed to avoid by not placing
> mats or rugs under the display.

<u>Jordan</u>, 2001 WL 420365, at *2. <u>See, e.g., Austin</u>, 486 S.E.2d at 288.

Here, as in <u>Jordan</u>, a reasonable factfinder could conclude that the defendant delivered ice

to Conference Room 2-152 in such a manner—<u>i.e.</u>, using a worn, unwieldy cart to deliver an

uncovered bowl of ice despite the knowledge of past spills—that the ice could and did fall to the

hallway floor, causing the puddled water that Bower allegedly stepped in and slipped on. <u>See</u>

<u>Jordan</u>, 2001 WL 420365, at *2. While such a scenario may be factually tenuous, the court must

conclude at this juncture that it is not purely speculative.[3] A reasonable factfinder could also

conclude that the hazard of ice spills and subsequent invitee-tumbles under such circumstances

was reasonably foreseeable, and that the defendant failed to avoid the hazard created by the ice

---

[3]This feature of the plaintiff's case distinguishes it from <u>Meyer v. Boddie-Noell Enters., Inc.</u>, 2011 WL
201524, at *5 (E.D. Va. Jan. 5, 2011) (unpublished), where the plaintiff was unable to show the nature of the
substance that caused her fall, and there was consequently no way for her to prove that the defendant had caused the
unknown substance to be on the floor or that it should have known that the substance was there.

spill by failing to use better-functioning carts or delivery systems, to cover the ice bowl, or to clean up the spill prior to Bower's fall. Id.

It follows that the plaintiff's evidence is sufficient to forestall summary judgment at this time. Anderson, 477 U.S. at 248. The court emphasizes, however, that this disposition of the defendant's present motion is not necessarily indicative of the merits of the plaintiff's case. For purposes of this motion, the court must take all factual disputes and inferences in the light most favorable to the plaintiff as the nonmoving party. Shaw, 13 F.3d at 798. The plaintiff's evidence must pass muster under a different standard at trial.

## IV.    **Spoliation of the Evidence**

In tandem with her response to the defendant's motion for summary judgment, the plaintiff has moved the court to draw adverse inferences as to the condition of the floor against the defendant because it has allegedly failed to preserve or produce evidence. Generally, an imposition of a discovery sanction—i.e., an adverse inference—for spoliation of evidence is "limited to that [action] necessary to redress conduct 'which abuses the judicial process.'" Hodge, 360 F.3d at 449 (quoting Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001)). An adverse inference may be drawn against a party who destroys relevant evidence either intentionally or in bad faith. Buckley v. Mukasey, 538 F.3d 306, 323 (4th Cir. 2008); Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155-56 (4th Cir. 1995). "While a finding of bad faith suffices to permit such an inference, it is not always necessary." Vodusek, 71 F.3d at 156.

Here, the plaintiff claims that the defendant acted wrongly in the following particulars: (1) failing to maintain the documents used by Ms. Henry to assign the catering on March 23, 2009; (2) failing to identify the custodial or VA Police employees who responded to Bower's

11

fall; and (3) inasmuch as the Acting Safety Officer denied Bower's daughter—Ms. Smith—access to the site of the fall during the evening following the incident.

The court agrees with the defendant that none of this conduct warrants an adverse inference against it. With respect to the catering documents, the plaintiff has not shown that the defendant "knew the evidence was relevant to some issue at trial and that [its] willful conduct resulted in its loss or destruction," given that the catering deliverer's possible involvement in the incident was not seriously interrogated until after the documents had already been destroyed. Hodge, 360 F.3d at 450. Moreover, the plaintiff has not identified how the documents would be material to her claims, given the catering department's practice of not documenting the identity of delivery personnel. With respect to the defendant's failure to identify certain witnesses, the defendant did, in fact, provide to the plaintiff the names of VA Police employees who responded to the scene. Nor has the plaintiff demonstrated any reason to disbelieve the defendant's assertion that it does not know of any custodial staff who came on scene. Hodge, 360 F.3d at 451; Vodusek, 71 F.3d at 156.

As for the plaintiff's quibble with the Acting Security Officer, there is no dispute that the hallway where Bower fell is accessible to the public and has been visited and viewed by the plaintiff's attorney. Instead, it appears that Ms. Smith asked on the evening of the incident only to enter the Dental Clinic suite—which was not the site of Bower's fall, and to which the Acting Safety Officer did not possess the key. There is therefore no ground warranting an adverse inference to be drawn against the defendant. See Hodge, 360 F.3d at 451 ("In essence, [the plaintiff] would require the application of a spoliation inference based on [the defendant's]

supposedly deliberate failure to reasonably investigate the causes of an accident on store premises—a proposition for which [the plaintiff] cites no authority.").

## V.     Conclusion

For the foregoing reasons, the motion for summary judgment filed by the defendant will be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This _7th_ day of July, 2011.

_____
Chief United States District Judge